## A. Kalklosch v. The State.

### No. 2966. Decided March 16, 1904.

**1.—Charge of the Court—Breaking Fence of Another.**

Where the evidence does not show actual, quiet and peaceable possession of the land on which the fence stood which was alleged to have been broken and pulled down by the appellant, there was no error in refusing a charge to the effect that the jury must acquit in the event they found such state of facts.

**2.—Evidence—Possession by Renters.**

There was no error to permit the State by different witnesses who had knowledge of the facts, that they had rented from the owner of the fence, built it, and cultivated the land which it inclosed as his tenants, etc., to show the possession and ownership of the fence alleged to have been broken down.

**3.—Same—Title Not Involved.**

The question of title can not be investigated in a trial for unlawfully injuring the fence of another, but only the fact of possession, and the court dd not err in excluding testimony as to where the boundary line between appellant and the alleged injured party was situated, in order to show upon whose land the fence stood.

Appeal from the County Court of Parker. Tried below before Hon. D. M. Alexander.

Appeal from a conviction of pulling down and injuring the fence of another; penalty, a fine of ten dollars.

The opinion states the case.

*Moseley & Stennis,* for appellant.—Behrens v. State, 14 Texas Crim. App., 121; Jenkins v. State, Id., 146; Carter v. State, 18 Id., 573.

*Howard Martin,* Assistant Attorney-General, for the State, in addition to the above, cited Arbuthnot v. State, 34 S. W. Rep., 269.

DAVIDSON, Presiding Judge.—This conviction was for breaking and pulling down and injuring the fence of one Bunting. The statement of facts discloses that there had been one or more suits in regard to the land on which the fence was built between appellant and other parties, in which appellant was invariably unsuccessful. The fence in question was built along the dividing line between appellant and one Applegate; that Applegate sold the land subsequently and Bunting became the owner; that the possession of the land and fence had been continuously in Applegate and the subsequent purchasers, and at the time of cutting it, it was in the possession of Bunting. Appellant claimed the land upon which the fence was built, and about or just after the time the renters were being changed on the land, appellant cut the fence and turned his stock in and began plowing on Bunting's side of the fence. Upon this he bases his claim for quiet and peaceable possession of the fence. Appellant admitted cutting the fence, which was invariably done in the absence of Bunting and his renter. There seems to have been an adjustment between appellant and Applegate in

which he admitted Applegate's right to possession, but protested against Applegate putting the fence on the land. This is perhaps a sufficient statement of the facts.

The court was requested to charge the jury if they believed appellant was in actual, quiet and peaceable possession of the fence and the land on which it was situated at the time the fence was broken, pulled down and injured, if it was so broken, pulled down or injured, they should acquit. This was refused. The court states the charge was refused because there was no evidence showing such possession by appellant. We find no error in this action of the court. The evidence does not justify such charge.

The State was permitted to introduce evidence to the effect that Richardson, under Applegate's direction, in 1899 built the fence in question between the tract of land claimed by Applegate and the tract of land on which defendant resided; that defendant did nothing to prevent witness from building the fence, and that as a renter of Applegate, witness cultivated the land claimed by Applegate during the year 1900. Also by Bevil that he cultivated the land during the years 1901 and 1902, and by Bunting that in March, 1903, he purchased the tract of land and fence from Applegate. This testimony was admitted to show the possession and ownership of the fence, and we think correctly. This was not admitted upon the issue of title, but simply to show that for the years mentioned the fence and land were in the possession of Applegate and those who purchased and held under him.

Appellant proposed to prove by three witnesses that the fence in controversy was on a tract of land on which defendant resided, about three feet from the line between said tract and the tract owned by Bunting. The court states that the witnesses were permitted to testify that the fence in question was the dividing line between the two tracts of land, but the witnesses were not permitted to testify as to where the boundary line of the tracts was situated. Defendant admitted that the fence was around the tract that had been decreed to Levy by the district court and to which he had surrendered possession. The State objected on the ground that it involved and necessitated an investigation of the title to the different tracts of land, which could not be heard in this character of proceeding in the county court. If proper exception had been reserved we believe the testimony was properly excluded. The question of title can not be investigated in a proceeding of this character—only the question as to the possession.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*